# 12-1011-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

MARCOS POVENTUD,

Plaintiff-Appellant,

-v.-

CITY OF NEW YORK, ROBERT T. JOHNSON, DISTRICT ATTORNEY, BRONX
COUNTY, FRANKIE ROSADO, Individually, Members of the New York
City Police Department, KENNETH UMLAUFT, Individually, Member
of the New York City Police Department, DANIEL TOOHEY,
Individually, Member of the New York City Police Department,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## DEFENDANTS-APPELLEES' PETITION FOR REHEARING
## IN BANC

MICHAEL A. CARDOZO,
Corporation Counsel of the
City of New York,
Attorney for Defendants-Appellees,
100 Church Street,
New York, New York 10007.
(212) 788-788-1025 or 1067

LARRY A. SONNENSHEIN,
MORDECAI NEWMAN,
of Counsel.

MAY 3, 2013

UNITED STATES COURT OF APPEAL
FOR THE SECOND CIRCUIT

MARCOS POVENTUD,

Plaintiff-Appellant,

-against-

CITY OF NEW YORK, ROBERT T. JOHNSON,
DISTRICT ATTORNEY BRONX COUNTY, FRANKIE
ROSADO, Individually, Member of the New York City
Police Department, KENNETH UMLAUFT,
Individually, Member of the New York City Police
Department, DANIEL TOOHEY, Individually, Member
of the New York City Police Department,

Defendants-Appellees.

## PETITION FOR REHEARING EN BANC

## PRELIMINARY STATEMENT

In this civil rights action asserted under 42 USC § 1983, plaintiff
Marcos Poventud ("plaintiff") seeks damages for the alleged withholding of
purported <u>Brady</u> material by defendants City of New York *et al.* ("defendants" or
"the City").  Plaintiff appealed to this Court from a decision and order of the
United States District Court for the Southern District of New York (Batts, USDJ),
which granted the City's motion for summary judgment dismissing the complaint,
on the ground that plaintiff's claims are barred because, in violation of the holding

of Heck v. Humphrey, 512 US 477 (1994), they called into question plaintiff's underlying criminal conviction, which has never been invalidated.

In a 2-1 decision, dated April 19, 2013, this Court reversed the district court, holding that "[b]ecause Poventud is no longer in custody, and therefore can no longer bring a federal habeas corpus suit, Heck's narrow exception to § 1983's otherwise broad coverage does not apply."  In the majority's view, its holding is dictated by a line of this Court's cases that rely on  a concurrence in the Supreme Court's decision in Spencer v. Kemna, 523 US 1 (1989).  In response, the dissent argued, *inter alia,* that the majority is mistaken to find that statements amounting to no more than dicta in Spencer limit the Supreme Court's earlier holding in Heck and that the line of Second Circuit cases that rely on the Spencer concurrence misconstrue binding Supreme Court law and should be abandoned.  The dissent noted further that, without any basis in the language of Spencer, and alone among all the circuit courts that have considered the interplay between Heck and the Spencer concurrence, the majority has improvidently held that "Heck is a bar to suit under § 1983 only until the convict is released from custody (because habeas corpus is no longer available to a person at liberty); and this stretch is widened to discount a post-vacatur plea of guilt to lesser charges on the same crime."

The extensive and detailed dissent in this case, written by Chief Judge Jacobs, correctly identifies the flaws in the majority's decision and demonstrates why the district court order should have been affirmed.  Consistent with the reasoning of the dissent, the City seeks rehearing *in banc* on the grounds, *inter*

*alia*, that: (1) in its line of cases leading up to its decision in the instant appeal, this Court has mistakenly applied Supreme Court dicta rather than the explicit holding of Heck v. Humphrey, which the Supreme Court has never abandoned; (2) even assuming, *arguendo*, that the concurrence by Justice Souter in Spencer v. Kemna is controlling law that limits the holding of Heck v. Humphrey, this Court, by holding that an individual who is no longer in custody has recourse to § 1983 even when he or she has pled guilty to a lesser charge on the same crime, goes beyond the scope of the Spencer concurrence and, indeed, contradicts the concurrence's letter and spirit; 3) in so holding, this Court has placed itself in opposition not only to those Circuits that have declined to regard the Spencer concurrence as controlling law but also to every other circuit that has ruled on the interplay between Heck and Spencer.

## A.     Background.

In 1998, following a trial in which plaintiff was charged with crimes in connection with the armed robbery and shooting of the driver of a livery cab, a jury convicted him of attempted murder in the second degree, attempted murder in the first degree, and criminal possession of a weapon in the first degree (A73-74, A150).[1]  The livery cab driver had identified plaintiff in a photo array and a lineup (A38, A41, A70-71).   The Appellate Division, First Department, affirmed the conviction and the 10-to-20 year sentence. People v. Poventud, 300 AD2d 223 (1st Dept).

---

[1]  Parenthesized numbers preceded by the letter A cite to pages of the Appendix.

After the holdup, a photo ID of plaintiff's brother Francisco was found in a wallet in the vehicle of Younis Duopos the livery cab driver (A69). Mr. Duopo indicated that the photo "looks like him," referring to the individual who had robbed and shot him (A69-70). It was determined, however, that Francisco had been in prison at the time of the crime (A70). In October 2005, the trial court vacated plaintiff's conviction under New York Criminal Procedure Law § 440.10, on the ground that the prosecution had withheld at trial Mr. Duopo's response to seeing the photo of Francisco. People v. Poventud, 10 Misc 3d 337, 340-41 (Bronx Co. 2005).

Rather than avail himself of the opportunity for a retrial and require the prosecution to meet its burden of proof, plaintiff, on January 30, 2006, in open court and in the presence of his counsel, accepted a plea of guilty to the lesser charge of attempted robbery with a weapon (A77-78, A91). The prosecutor dismissed the remaining charges as part of a plea bargain (A76, A86). Based on his guilty plea to a lesser charge, plaintiff was resentenced to one year (time served) and released ( A95-96).

Plaintiff commenced the instant lawsuit in the United States District Court for the Southern District of New York on or about May 22, 2007 (A16, 151). Under 42 USC § 1983 and the due process provision of the United States Constitution, plaintiff alleged, *inter alia,* that the City violated his due process rights by depriving him of the opportunity for a fair trial (A54).

In July 2009, plaintiff successfully stayed the instant action and moved in state court for a second time under New York State Criminal Procedure Law § 440.10, seeking to vacate his guilty plea (A77-78).  The state court granted a hearing to determine whether plaintiff's plea had been voluntary, but plaintiff withdrew his motion before the hearing was held (A-76).

**B.      The district court decision.**

On or about June 14, 2011, the City moved for summary judgment dismissing the complaint.

By memorandum and order (one paper), dated March 4, 2012, the United States District Court for the Southern District of New York (Batts, USDJ), granted the City's summary judgment motion and dismissed the complaint in its entirety (A149).  The district court relied primarily on <u>Heck v. Humphrey</u>, 512 US 477 (1994), in which the Supreme Court stated that "when a state prisoner seeks damages in § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  <u>Id</u>. at 487.  In such an instance, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of habeas corpus."  <u>Id</u>. at 486-87 (footnote and citation omitted).  In the case at bar, the district court noted, that plaintiff "cannot

demonstrate invalidity of either his initial conviction or his subsequent guilty plea and reconviction" (A155).

As part of its reasoning, the district court rejected the argument that plaintiff is exempt from <u>Heck</u>  because, having been released from custody, he no longer has access to relief through federal habeas corpus.  The court noted that plaintiff, of his own volition, declined to avail himself of the state remedies by which he could have sought to invalidate his conviction.  Having failed to take advantage of the remedy that was available to him, the court concluded, plaintiff cannot claim to have evaded the invalidity requirement of <u>Heck</u>.

**C.    This Court's decision.**

In a 2-1 decision, this Court, in an opinion by Judge Calabresi in which he was joined by Judge Sack, reversed the district court and reinstated plaintiff's § 1983 action, on the ground that, because plaintiff no longer has access to habeas corpus, the <u>Heck</u> limitation on the scope of § 1983 does not apply.

The majority pointed to the concurrence by Justice Souter in <u>Spencer v. Kemna</u>, 523 US 1 (1998), a Supreme Court case decided four years after <u>Heck</u>, in which the 8-1 majority denied habeas corpus relief to the petitioner.  In what the majority acknowledges as dicta, Justice Souter wrote that he would limit the <u>Heck</u> holding to the extent "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."  <u>Id</u>. at 21.   Three other justices joined Justice

Souter in his concurrence.  In addition, Justice Stevens, writing in dissent, stated in a footnote that although he would have granted the petitioner the right to seek habeas corpus, he joined with Justice Souter in finding that in the absence of such relief the petitioner should have the right to bring an action under § 1983.

In a subsequent line of cases on which the majority relied, this Court has characterized the Souter concurrence, and the five justices who were party to it, as proposing the rule that "some federal remedy – either habeas corpus or § 1983 – must be available."  Jenkins v. Haubert, 179 F3d  19 (2d Cir. 1999).  Accordingly, the majority concluded, the instant plaintiff, having no access to habeas corpus, must be afforded the right to assert his § 1983 claims.

The majority further contended that plaintiff's § 1983 action calls into question only his "first" conviction, which the majority deemed to be invalidated, and not plaintiff's purported "second" conviction.[2]  In the majority's view, plaintiff seeks damages based on his conviction at trial ("first" conviction) but makes no claims with regard to his guilty plea ("second" conviction).

In his 34-page dissent, Chief Judge Jacobs acknowledged a split in the Circuits over whether to adopt the Souter concurrence as law.  The line of this Circuit's cases relied upon by the instant majority, the dissent argued, is a unique and unsupported innovation by this Court "that cannot be located on either side of that Circuit split."

---

[2]   As is expanded upon in page 11 herein, the distinction between a "first" and "second" conviction is an artificial creation of the majority, and has no basis in the procedural history of this case.

The dissent argued that the line of Second Circuit cases on which the majority relied should be reconsidered because they improperly invoked Supreme Court dicta to overturn well established precedent in this Court, while refusing to be bound by the actual explicit holding of <u>Heck</u>, which made clear that the rule "did not turn on the availability of habeas relief." That rule, the dissent noted, has never been disavowed by any majority holding of the Supreme Court.

The dissent observed, moreover, that even if the Souter concurrence is to be deemed controlling, that concurrence nowhere states that an individual claiming an unlawful conviction, who is without access to habeas corpus, must in all circumstances have the right to assert a § 1983 claim. Justice Souter limited his proposed holding to circumstances in which the allegedly aggrieved individual has no avenue at law, whether federal otherwise, to satisfy <u>Heck</u>'s favorable termination requirement.

Furthermore, the dissent contended, the previous statements by this Court adopting the Souter exception were all cases that were distinguishable on their facts. These statement are thus themselves to be regarded as dicta.

The dissent also refuted the majority's distinction between a purported "first" conviction that was invalidated (the trial conviction) and a "second" conviction (the guilty plea) as to which plaintiff allegedly makes no § 1983 claim. As observed by the dissent, the distinction is meaningless, since success on the claim made as to the trial conviction would necessarily imply that the guilty plea was similarly wrongful.

The relevance of rehearing *in banc* to the resolution of the opposing views in this case became itself the source of sharp dispute between the two sides. The dissent argued that because the <u>Heck</u> holding was the source of an entrenched body of Second Circuit jurisprudence, the cases of this Court on which the majority relied "could not have undone the law of this Court without a review *in banc*." The majority responded in a "Coda" added to its opinion, in which the majority accused the dissent of making such an addendum necessary through the inappropriately "apocalyptic" tone of its rhetoric. Among the purported analytical "flaws" with which the "Coda" charged the dissent was the latter's alleged failure to recognize that "had anyone [on the Court] cared to disagree with [the line of this Court's cases on which the majority relied] on the ground that they deviated from prior holdings, the time to say so was when those four cases were decided. Accordingly, one would have expected a request for *in banc* reconsideration at that time."

This response by the majority prompted a further rebuttal by the dissent, which stated in its footnote 4: "[T]here is little point in mobilizing the Court *in banc* to excise dicta. Second, this Court is notoriously reluctant to sit *in banc*."

**D.    Why the instant decision merits rehearing *in banc*.**

Rule 35(a) of the Federal Rules of Appellate Practice provides that a circuit decision is appropriate for *in banc* review when such consideration "is necessary to secure or maintain uniformity of the court's decisions," or when "the

proceeding involves a question of exceptional importance." The issues raised by this Court's majority and dissent opinions in the instant appeal fulfill both criteria.

First, as the dissent argues, the majority opinion and the line of four Second Circuit decisions on which the majority relies[3] deviate without justification from the prior jurisprudence of this Court, which had first anticipated, and then scrupulously adhered to, the Supreme Court's majority holding in Heck. That the Souter concurrence in Spencer constitutes dicta rather than a formal holding is beyond dispute. Moreover, as asserted by Chief Judge Jacobs' dissent, the result in each of the four cased relied upon are factually distinguishable from a case in which the a convicted individual who has been afforded the full panoply of state remedies seeks to assert § 1983 claims without first having the conviction invalidated. Any such principle that one seeks to derive from these cases must likewise be based on dicta. The ultimate outcome in the instant case, as properly characterized by the dissent, is that the majority relied on "dicta distilled from dicta."

The issue of consistency with regard to the application of Heck is highlighted by this Court's decision in McNeill v. People of the City and State of New York People of the City and State of New York, 242 Fed Appx 777 (2007), where the facts were remarkably similar to those in the instant case  See McNeill, 2006 U.S. Dist. LEXIS 77085 (2006). A panel that included both judges of the

---

[3]  The four decisions are Jenkins v. Haubert, 179 F3d 19 (2d Cir. 1999); Leather v. Ten Eyck, 180 F3d 420 (2d Cir. 1999); Green v. Montgomery,  219 F3d 52 ( 2d Cir. 2000); Huang v. Johnson, 251 F3d  65 (2d Cir. 2000).

instant majority held that "[a]lthough Appellant's state court conviction was vacated, his subsequent guilty plea stands as a bar under Heck to § 1983 action." 242 Fed Appx at 778.    While McNeill is not a reported case, and thus does not have controlling authority, the participation of the majority judges in that decision calls into question, at the very least, the consistency of the majority's current reasoning.

Moreover, the majority seriously erred by holding that Heck is irrelevant to this case because plaintiff challenges only a "first" invalidated trial conviction and not a "second" conviction arising from plaintiff's guilty plea.  As a procedural matter, the distinction between a first conviction and second guilty plea has no basis.  This case involves only one indictment and one set of charges. Accordingly,  a challenge based on the evidence disclosed at trial is necessarily a challenge to the guilty plea that ultimately resulted from the same proceeding.  The conviction based on the guilty plea is not separate or severable from any stage that came before it; it is part of the singular and continuous prosecution of plaintiff for the events surrounding the livery cab shooting.

In addition, as a matter of logic, and as pointed out in the dissent, success on the challenge to the trial conviction is incompatible with the basis for the guilty plea and would  thus constitute a challenge to the plea as well.  Plaintiff alleges that the Francisco Poventud identification supports his defense that he was not at the scene of the crime.  Such a finding would be inherently inconsistent with his guilty plea, which confessed that he engaged in an attempted robbery at the

11

time and place of the livery cab shooting.  Thus, even if, *arguendo,* the guilty plea were to be construed as a second conviction, it would still, under <u>Heck</u>, have to be invalidated before plaintiff could bring his § 1983 action.

Finally, in the absence of a consensus decision based on *in banc* review, sharp differences among the judges of this Court with regard to the application of <u>Heck</u> and <u>Spencer</u>, such as those that have arisen in the instant case, are likely to make this Court's failure to apply the majority holding in <u>Heck</u> rule a source of ongoing controversy and unnecessary litigation.

**CONCLUSION**

**THE DEFENDANTS SHOULD BE GRANTED REHEARING EN BANC AND, UPON SUCH HEARING, THE COURT'S MAJORITY OPINION SHOULD BE VACATED AND THE DECISION AND ORDER (ONE PAPER) APPEALED FROM AFFIRMED.**

May 3, 2013

Respectfully submitted,

MICHAEL A. CARDOZO,
Corporation Counsel of the
    City of New York,
Attorney for Defendants-Appellees

By:

_____

MORDECAI NEWMAN (MN2074)
Asst. Corp. Counsel

LARRY A. SONNENSHEIN,
MORDECAI NEWMAN,
    of Counsel.

12-1011-cv
Poventud v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: December 20, 2012        Decided: April 19, 2013)

Docket No. 12-1011-cv

_____

Marcos POVENTUD,

*Plaintiff-Appellant*,

— v. —

CITY OF NEW YORK; Robert T. JOHNSON, in his official capacity as District Attorney for Bronx County; Frankie ROSADO, Kenneth UMLAUFT, Christopher DOLAN, and Daniel TOOHEY, individually and as members of the New York City Police Department,

*Defendants-Appellees.*

_____

Before: JACOBS, *Chief Judge*, CALABRESI and SACK, *Circuit Judges*.

Appeal from a decision of the United States District Court for the Southern District of New York (Batts, *J.*) granting summary judgment to defendants and dismissing plaintiff's 42 U.S.C. § 1983 claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Because plaintiff is no longer in custody, federal habeas relief is unavailable to him. Under the law of this Circuit, plaintiff must have access to a *federal remedy*, either under the habeas statute or under § 1983. As plaintiff cannot avail himself of habeas relief, he must be allowed to pursue his claims under § 1983. Accordingly, *Heck*'s exception to § 1983's broad coverage does not apply to his claims. We therefore VACATE the decision of the district court and REMAND for further proceedings.

Chief Judge Jacobs dissents in a separate opinion

JOEL B. RUDIN, Esq., Law Offices of Joel B. Rudin, New York, NY, and Julia P. Kuan, Romano & Kuan, New York, NY, *for Plaintiff-Appellant*.

MORDECAI NEWMAN, Larry A. Sonnenshein, and Rachel Seligman Weiss, *of counsel*, *for* Michael A.

Provided by CourtAlert www.CourtAlert.com

Cardozo, Corporation Counsel of the City of New York, *for Defendants-Appellees*.

CALABRESI, *Circuit Judge*:

In June 1998, plaintiff-appellant Marcos Poventud was convicted of attempted murder in the second degree, attempted robbery in the first degree, assault in the first degree, and criminal possession of a weapon in the second degree. He was sentenced to 10 to 20 years in prison. Poventud ultimately succeeded in having his conviction vacated, but the prosecution appealed, and Poventud was denied bail. Rather than await a new trial in custody, Poventud pled guilty to a lesser charge for which the penalty was a one-year sentence—a jail term that Poventud had already served.

In May 2007, Poventud brought the instant action under 42 U.S.C. § 1983, alleging *Brady* violations against the officials who conducted his original investigation and prosecution. In July 2009, Poventud stayed this proceeding pending the outcome of a state-court motion to invalidate his guilty plea. Poventud later withdrew the state motion without prejudice and resumed this suit. In June 2011, defendants moved for summary judgment. The District Court (Batts, *J.*) granted the motion in March 2012, ruling that Poventud's § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Poventud v. City of New York*, No. 07 Civ. 3998 (DAB), 2012 WL 727802, at *3 (S.D.N.Y. Mar. 6, 2012).

We disagree. Because Poventud is no longer in custody, and therefore can no longer bring a federal habeas suit, *Heck*'s narrow exception to § 1983's otherwise broad coverage does not apply. Poventud may bring suit under § 1983 regardless of any defenses which might arise based on his subsequent guilty plea to the lesser charge.

Provided by CourtAlert    www.CourtAlert.com

Accordingly, we vacate the District Court's decision granting summary judgment and remand for further proceedings.

## BACKGROUND

The parties dispute various points in the factual record. When, as here, we review a grant of summary judgment dismissing a complaint, "we construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in his favor." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 217 (2d Cir. 2006).

In March 1997, Younis Duopo was robbed and shot in the head or neck by two men sitting in the back seat of a livery cab that Duopo was driving through the Bronx. Later, Frankie Rosado, a detective, found a wallet on the floor of the cab by the front passenger seat. Somehow the NYPD Crime Scene Unit had missed the wallet. The wallet contained a pair of old photo I.D. cards belonging to Francisco Poventud, brother of the plaintiff-appellant. When investigators showed Duopo a photo array containing one of the photos of Francisco Poventud (who allegedly looks nothing like his brother), Duopo positively identified it as a picture of his assailant. At the time, however, Francisco Poventud was incarcerated and could not possibly have committed the crime. Detectives then showed Duopo photo arrays containing a picture of Marcos Poventud. Only upon seeing Marcos's photo for the fourth time did Duopo identify Marcos as the shooter. Marcos was arrested, identified (by Duopo) at a line-up, and indicted, along with a co-defendant, Robert Maldonado, whom Duopo also identified. Investigators left no record of the false identification of Francisco Poventud; they also did not disclose it

3

to defense counsel or to the Bronx County prosecutors; and they did not preserve the photo array.

Marcos Poventud learned all of this only during the 2003 retrial of Robert Maldonado. In December 2004, Poventud filed a motion under N.Y. C.P.L.R. § 440.10 to vacate his conviction on the ground that the prosecution withheld exculpatory evidence. The New York Supreme Court for Bronx County granted this motion in October 2005. The prosecution filed a notice of appeal; successfully argued that Poventud be denied bail; and offered him immediate release in exchange for a guilty plea to a non-violent, Class E felony charge of third-degree attempted robbery. By this time, Poventud had been incarcerated for nearly nine years. Poventud testifies that during his imprisonment he endured gruesome and repetitive physical and sexual abuse; that he attempted suicide; and that he suffered from depression and post-traumatic stress disorder. In January 2006, Poventud accepted the terms of the plea bargain and went home.

Poventud now contends that he was deceived into pleading guilty. He alleges that the assistant district attorney knew, but did not disclose, that the district attorney's office had decided not to perfect its appeal. Poventud alleges further that the ADA withheld crucial information from the defense. When he learned of these omissions, Poventud stayed the instant federal suit and moved in state court to have his guilty plea vacated as involuntarily given. The New York Supreme Court for Bronx County granted an evidentiary hearing on the question of voluntariness, but Poventud withdrew his motion without prejudice. He says he did this after learning that he had multiple myeloma, after nearly dying from kidney failure, and after undergoing bone and stem cell transplants and chemotherapy. Poventud asserts that he thought the stress and

4

Provided by CourtAlert                                                www.CourtAlert.com

infection risks of a new trial, together with the possibility, however remote, of returning to jail, would kill him.  After withdrawing his state motion, Poventud resumed this federal action under 42 U.S.C. § 1983, in which he alleges violations of his federal due process and fair trial rights under *Brady v. Maryland*, 373 U.S. 83 (1963).  He also sues the City of New York for failing properly to train its officers.

The district court found that, because plaintiff's guilty plea was to conduct that "necessarily required his presence at the scene of the crime," success on a § 1983 claim arising out of the suppression of evidence relevant to his alleged misidentification would "logically imply the invalidity" of his guilty plea. *Poventud*, 2012 WL 727802, at *3.  This being so, the court continued, Poventud could survive summary judgment under *Heck* only by showing "that the challenged conviction has been reversed, expunged, invalidated, or called into question." *Id.*  Poventud could do none of this, the court concluded, either as to his first conviction or to his guilty plea.  Moreover, Poventud's "decision not to pursue in the state court an available remedy by which he could invalidate his [guilty plea] does not relieve him of his obligation to demonstrate its invalidity if he is to avoid the bar established in *Heck*." *Id.* at *4.  The district court granted defendants' motion for summary judgment, and this appeal followed.

## DISCUSSION

We review grants of summary judgment *de novo*.  *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011).

We conclude that *Heck* does not bar Poventud's § 1983 claims.  Under the law of this Circuit, a plaintiff asserting the unconstitutionality of his conviction or incarceration must have access to a federal remedy.  Normally that remedy is through a

§ 1983 action. If, however, the plaintiff is in custody, *Heck* may apply and require that the plaintiff assert his claim first in a habeas petition. As Poventud is no longer in custody, *Heck* does not bar his claims under § 1983. The district court erred, then, in granting summary judgment against him on the basis of *Heck*. The law of this Circuit in this matter derives from the interplay of two Supreme Court decisions: *Heck v. Humphrey* itself, and the subsequent *Spencer v. Kemna*, 523 U.S. 1 (1998).

Heck *and* Spencer

The petitioner in *Heck* was a state prisoner who sought relief under § 1983. Earlier, Heck had twice sought and failed to secure relief under the federal habeas statute. In upholding the dismissal of Heck's § 1983 claims, the Supreme Court held that when the success of a § 1983 claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," the complaint must be dismissed unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. In other words, the Court continued,

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

6

*Id.* at 487. This statement tracked the fact pattern in *Heck*, which involved "a state prisoner"—that is, someone still in custody. In a footnote, and in dicta, the Court suggested, however, that the rule should similarly apply to plaintiffs no longer in custody: "We think the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id.* at 490 n.10.

In a concurrence, Justice Souter, joined by three colleagues, expressed reservations about denying relief to plaintiffs seeking damages under § 1983 for unconstitutional convictions or imprisonment who, because they were no longer imprisoned, could have no relief under habeas. Extending *Heck*'s favorable termination requirement to plaintiffs not in custody, Justice Souter wrote, would "deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling." *Id.* at 500 (Souter, J., concurring). A better way to read the majority's opinion is "as saying nothing more than that now, after enactment of the habeas statute and because of it, *prison inmates* seeking § 1983 damages . . . must satisfy a . . . favorable-termination requirement." *Id.* (emphasis added).

Four years after *Heck*, Justice Souter repeated these views in another concurrence. *Spencer*, 523 U.S. at 18-21 (Souter, J., concurring). This time he was joined by four Justices. Three joined Justice Souter's concurrence, which stated (again in dicta, as the case ultimately turned on other grounds) "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination

7

requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21.[1] And Justice Stevens, in dissent, went out of his way to adhere to Justice Souter's position. *Id.* at 25 n.8 (Stevens, J., dissenting).

*The Law of the Circuit*

Our Court has adopted Justice Souter's dicta in *Spencer*. In *Jenkins v. Haubert*, we reversed the dismissal of a former inmate's § 1983 challenge to the validity of two prison disciplinary hearings. 179 F.3d 19 (2d Cir. 1999). We held that "a § 1983 suit by a prisoner . . . challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of a prisoner's confinement is not barred by *Heck*." *Id.* at 27. To hold otherwise, we noted, "would contravene the pronouncement of five justices that *some federal remedy*—either habeas corpus or § 1983—must be available." *Id.* (emphasis added). In *Leather v. Eyck*, decided the same day as *Jenkins*, we held that *Heck* did not bar the § 1983 suit of an arrestee who was convicted (but fined rather than imprisoned) for driving while impaired. 180 F.3d 420 (2d Cir. 1999). "Because Leather is not and never was in the custody of the State," we explained, "he, like *Jenkins*, has no remedy in habeas corpus. Having escaped the jaws of *Heck*, Leather should therefore be permitted to pursue his § 1983 claim in the district court." *Id.* at 424.

Since *Jenkins* and *Leather*, we have repeatedly affirmed that *Heck*'s favorable-termination requirement applies only to plaintiffs who are in custody, and that all other claimants—those who have no remedy in habeas—may pursue their claims under

---

[1] Between *Heck* and *Spencer*, Justice Ginsburg revised her view of the matter. *See Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring) ("I have come to agree with Justice SOUTER's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's broad reach.") (internal quotation marks omitted).

Provided by CourtAlert     www.CourtAlert.com

§ 1983. *See McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) ("Over time, [*Heck's*]

implicit exception [to § 1983's otherwise broad coverage] has been carefully

circumscribed."); *Huang ex rel. Yu v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001) ("In light

of our holding in *Leather,* and in light of . . . the fact that the *Spencer* concurrences and

dissent 'revealed that five justices hold the view that, where federal habeas corpus is not

available to address constitutional wrongs, § 1983 must be,' we conclude that Huang's

Section 1983 claim must be allowed to proceed.") (quoting *Jenkins*, 179 F.3d at 26);

*Green v. Montgomery*, 219 F.3d 52, 60 n.3 (2d Cir. 2000) ("We have held . . . that *Heck*

acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to

him (i.e., when he is in state custody).   Because it does not appear that Green is

presently in state custody, his § 1983 action is not barred by *Heck*." (internal citations

omitted)).

 The facts in this case differ somewhat from the facts in the cases just cited, but

not in a way that is material to the issue before us.   After Poventud's original conviction

was vacated, but before that vacatur was affirmed on appeal, Poventud pled guilty to a

lesser, related offense.[2]   This fact, however, does not alter the underlying principle that a

---

[2] Although we think it unnecessary to reach the issue in light of our conclusion that *Heck's* bar does not
apply to a § 1983 plaintiff who is not in custody, even if *Heck* did apply, we are doubtful that success on
Poventud's § 1983 suit would "necessarily imply the invalidity," *Heck*, 512 U.S. at 487, of his subsequent
guilty plea.   The alleged *Brady* violation resulted in a conviction that was later vacated.   Because that
conviction was vacated—regardless of whether Poventud then pled guilty or was retried—victory in his
§ 1983 suit would no longer implicate the validity of an outstanding criminal judgment. *See Smith v.
Gonzalez*, 222 F.3d 1220, 1222 (10th Cir. 2000); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) (per
curiam).   Moreover, Poventud's § 1983 suit cannot call into question the validity of his guilty plea,
inasmuch as it is undisputed that at the time he pled guilty Poventud was aware of the *Brady* violation on
which his present lawsuit is based. *See Smith*, 222 F.3d at 1222 (where conviction was vacated and case
remanded due to *Brady* violation, success on plaintiff's § 1983 suit had no relevance to a later criminal
trial, since the prosecution could not withhold the same exculpatory evidence at a subsequent trial).

claimant who cannot seek relief under habeas must be able to seek it under § 1983. Poventud's guilty plea may (or may not) supply defendants with a defense that no § 1983 violation occurred. But it does not entitle them to summary judgment under *Heck*.

To repeat, the law of this Circuit makes clear that a plaintiff alleging civil rights violations in connection with his conviction or imprisonment must have access to a federal remedy either under habeas or under § 1983. Because Poventud is not in custody, he has no remedy under habeas. He must be able, therefore, to pursue relief under § 1983.

## CODA

We would end here, but for the apocalyptic tone of the dissent, which requires a brief answer. Among its many flaws are the following.

*First*. Contrary to the dissent's assertion, the majority does not rely principally on *Leather*. It relies at least as much on *Jenkins*. It does so because *Jenkins*, an opinion written by Judge Walker and concurred in by Judge Miner and Judge Sack,[3] most clearly embraced, and most thoroughly recited the history behind, the proposition that we reaffirm today: "that some federal remedy—either habeas corpus or § 1983—must be available." 179 F.3d at 27. To be sure, the panel in *Jenkins* also had other grounds for its decision. *Id.* ("We do not rest our holding solely on our tally of votes on the [Supreme] Court for Justice Souter's view of *Heck*."). And it is true, as the dissent points out, that *Jenkins* dealt with prison discipline rather than a conviction. But that, for purposes of the case before us, is a distinction without a difference. The court in *Jenkins* did not

---

[3] We mention the names of individual judges only because the dissent goes out of its way to do so.

limit its endorsement of Justice Souter's position to the facts before it. It stated that endorsement as a general proposition and, having done so, made it one basis for its holding.

It is significant, moreover, that *Jenkins* and *Leather* (which dealt with an actual criminal conviction, and not only with conditions of confinement) came down the same day. As is well known, the normal practice, when two panels are dealing with closely related issues at the same time, is for the panels to communicate with each other to ensure, if at all possible, that the opinions are consistent. One can therefore assume that, together, *Jenkins* and *Leather* reflected the law of the Circuit at the time, and that the law was, as *Jenkins* stated it, "that some federal remedy—either habeas corpus or § 1983—must be available." 179 F.3d at 27. Significantly, within a year, this view was affirmed again in *Green v. Montgomery*, which stated that "*Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody)." 219 F.3d at 60 n.3 (Kearse, J.; Calabresi, J.; Katzmann, J.). Less than a year after *Green*, this position was stated yet again in *Huang v. Johnson*. 251 F.3d at 75 ("In light of our holding in *Leather,* and in light of both the *Spencer* majority's dictum and the fact that the *Spencer* concurrences and dissent 'revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,' *Jenkins,* 179 F.3d at 26, we conclude that Huang's Section 1983 claim must be allowed to proceed.") (Feinberg, J.; Winter, J.; Cabranes, J.).

11

Provided by CourtAlert                                        www.CourtAlert.com

Within a period of two years, then, four unanimous panels of the Second Circuit, including a majority of active judges sitting throughout that time,[4] affirmed the position of the Circuit that *Heck*'s bar on § 1983 relief applies only when federal relief can be sought under habeas. These panels so ruled because, as the *Jenkins* Court noted, to do otherwise "would contravene the pronouncement of five justices that some federal remedy—either habeas corpus or § 1983—must be available." 179 F.3d at 27. And this is the principle the majority follows today. Indeed, this position is so clearly the current law of the Circuit that the majority considered this case a candidate for disposition by summary order on this ground only, rather than on the alternate ground discussed below.

*Second.* The dissent suggests, nonetheless, that *Jenkins*, *Leather*, *Green*, and *Huang*—and the judges who participated in those three decisions—flew in the face of a Supreme Court holding that remained the law despite subsequent Supreme Court dicta to the contrary. If that were true, these opinions would have been wrong,[5] and one would have expected that fact to have been raised at the time. The Supreme Court in *Heck* decided a case in which habeas *was* available. In dicta, in a footnote, which was

---

[4] That is, seven active judges (Judges Kearse, Walker, Calabresi, Cabranes, Straub, Sack, and Katzmann) out of thirteen. Judge Winter, who served as Chief Judge when *Jenkins*, *Leather*, and *Green* were decided, had assumed senior status before writing the panel opinion in *Huang*.

[5] This was not always necessarily so, *see W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (affirming a district court decision that parted with clear Supreme Court precedent in the belief that the Supreme Court would now decide the matter differently), but it is so now, *see Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Provided by CourtAlert                                                                                www.CourtAlert.com

completely unnecessary to the decision in *Heck*, there is language suggesting that the holding might well be extended to a future case where  habeas was not available. *Heck*, 512 U.S. at 490 n.10.  It was to distance himself from this dicta that Justice Souter wrote his concurrence.  And, when one of the Justices who had joined the *Heck* footnote changed her mind, *see Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring), it became clear that the *Heck* dicta no longer commanded the support of a majority of Supreme Court Justices.

In such circumstances—i.e., where there is no Supreme Court holding in one direction, and there are powerful statements by a majority of the Justices in an opposite direction—it is perfectly appropriate (though not required) for a lower court to embrace the position adopted (albeit in dicta) by that majority.  This is precisely what the panels in *Jenkins*, *Leather*, *Green*, and *Huang* did.

*Third*.  The dissent claims that in doing this, the *Jenkins*, *Leather*, *Green*, and *Huang* Courts improperly altered the law of the Circuit without going *in banc*.  There is no need, however, to discuss today what the Circuit law was before the Supreme Court decided *Heck* and *Spencer*.  For, even assuming, very much, arguendo that the dissenter is correct as to our Circuit's pre-*Heck* law,[6] it is readily accepted that a panel of this

---

[6] We note that the two Second Circuit decisions—*Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992) and *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980)—that the dissent adduces for the proposition that our pre-*Heck* cases did not turn "on whether the plaintiff was incarcerated or at liberty when suit was filed," both involved § 1983 claims sounding in malicious prosecution.  Of course these cases didn't turn on whether the plaintiff was in or out of custody.  They turned on the fact that favorable termination is an element of malicious prosecution.  These decisions did not anticipate *Heck*; they simply applied an old common law rule from which the *Heck* majority drew a controversial analogy.  Whatever the vices of the *Jenkins-Leather-Green-Huang* line of cases, we do not think that even so hardened a foe as the dissenter can accuse them of straying from the notion that a claim must be dismissed if one of its elements—i.e., favorable termination in malicious prosecution suits—is missing.  The dissent also cites two cases—

Provided by CourtAlert    www.CourtAlert.com

Court may depart from a prior decision when that earlier decision's "rationale is overruled, implicitly or expressly, by the Supreme Court." *In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000) (per curiam) (internal quotation marks omitted).  As far as we can determine, our Court has not clearly decided whether such undermining must happen in a holding by the Supreme Court, or whether clear dicta also suffices.[7]  In any event, had anyone cared to disagree with *Jenkins* or *Leather* or *Green* or *Huang* on the ground that they deviated from prior holdings, the time to say so was when those four cases were decided.  Accordingly, one would have expected a request for *in banc* reconsideration at that time.  There was no such request, which comes as no surprise given the unanimity of support in those cases for the position we reaffirm today.  The dissenter obviously disagrees, as is his right, with the position our Court then took.  But, given those holdings, we would think it preferable for the dissent to state that disagreement by concurring in today's result and expressing distaste for the settled law that requires such a concurrence.

  *Fourth*.  Quite apart from whether the absence of habeas, by itself, means that a § 1983 action may lie, the dissent is incorrect in its statement that *this* § 1983 action

---

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999), and *Channer v. Mitchell*, 43 F.3d 786 (2d Cir. 1994) (per curiam)—that were not malicious prosecution cases, but were cases in which the petitioner was still incarcerated and could bring habeas.  The bar on § 1983 suits in those circumstances, of course, continues to apply.

[7] In one case, in which the Supreme Court had suggested a certain direction in dicta but then explicitly left the question open, we concluded that "the Supreme Court's dicta do not outweigh prior circuit authority." *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 70 (2d Cir. 2004), *rev'd on other grounds by KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005).  As a general matter, however, "[w]e have also observed that we may depart from a prior decision when it merely 'has been called into question by an intervening United States Supreme Court decision.'" *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 101 n.12 (2d Cir. 2005) (quoting *Meacham*, 381 F.3d at 69).

calls into question Poventud's second conviction.  It does nothing of the sort.  It asserts that his constitutional rights were violated by the state through a *Brady* violation. Under *Heck*, this could not have been brought up prior to the quashing of his *first* conviction because a finding of a *Brady* violation would undercut that conviction.  But once *that* conviction was quashed, the *Brady* violation—if one were established, and if it injured Poventud—would constitute an independent infringement of Poventud's constitutional rights, regardless of his *subsequent* conviction.

To give a dramatic example: suppose a defendant is tortured viciously, confesses, and is convicted on the basis of that confession.  Under *Heck*, he cannot, while in jail on that conviction, bring a § 1983 action for being tortured because that would undercut the conviction.  But once his conviction is quashed (through habeas or in other ways), he is free to assert that he was tortured and seek a § 1983 remedy.  Does the dissent really believe that this becomes less true if that defendant later freely confesses, even to the same crime?  At that point, the claim for damages for torture in no way undercuts the second, and only existing, conviction and hence is in no way barred by *Heck*.

At core, this is what Poventud claims today.  He seeks damages for the harm caused by a *Brady* violation in connection with his first (invalidated) conviction; he makes no claims at all with respect to his second (outstanding) conviction.  *See* Appellant's Br. 32 ("Seeking damages only for punishment he suffered in excess of the one-year imprisonment he accepted as part of his plea, the lawsuit, if successful, would not be inconsistent with that plea.").  As noted earlier, whether there was such a violation, and whether there were such damages, will be determined in a § 1983 trial. But whatever the result of that trial, Poventud's subsequent guilty plea is not undermined by his § 1983 action.

Finally, the dissent makes the extraordinary argument that habeas might be available to Poventud because his "inability to bring a § 1983 action alone may constitute a collateral consequence sufficient to overcome a mootness challenge and support a . . . post-release habeas petition." This argument, which has not been made by *anyone* in this case, is circular. It posits a result—the unavailability of § 1983 relief—and on the basis of that result creates the premise for that result. It is, in short, absolutely Ptolemaic in the uselessness of its epicycles.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND the case to the district court for further proceedings consistent with this opinion.

1    DENNIS JACOBS, <u>Chief Judge</u>, dissenting:

2    Marcos Poventud's 1998 New York State conviction for

3    holding up a livery-car driver was vacated by the courts of

4    New York on a <u>Brady</u> violation, and he was released from

5    custody in 2005 after pleading guilty--on lesser charges--to

6    the same hold-up at the same place and time, on the same

7    date.  He has sued prosecutors and police, under 42 U.S.C.

8    § 1983, for achieving his conviction for a crime that he

9    committed--as he has conceded under oath and in open court.

10   The United States District Court for the Southern District

11   of New York (Batts, <u>J.</u>) dismissed the complaint on the

12   ground that, under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), he

13   cannot sue under § 1983 unless the conviction has been

14   overturned.  I would affirm.  The only errors in this case

15   have been introduced on appeal.

16   The majority holds that <u>Heck</u> is no bar to a civil suit

17   once the sentence has been served, regardless of whether the

18   conviction was overturned.  The majority relies on a

19   concurrence in <u>Heck</u> and dicta in other Supreme Court cases,

20   and on Second Circuit case law that has accrued along these

21   lines.

22   I respectfully dissent.  My objection goes deep, to the

23   root of the error in Second Circuit cases that prefer dicta

1    in Heck to its holding--a holding that confirmed

2    longstanding Second Circuit law.  As the majority opinion

3    states, concurrences in Heck and Spencer v. Kemna, 523 U.S.

4    1 (1998) posited the idea that Heck might not bar a civil

5    claim for damages notwithstanding that the claim necessarily

6    called into question an undisturbed criminal conviction, if

7    habeas is unavailable to challenge the conviction under the

8    federal Constitution.  Spencer precipitated a Circuit split,

9    with some Circuits recognizing a few narrow exceptions to

10   Heck, and others countenancing no exception at all.  The

11   majority opinion follows and extends a line of cases in this

12   Circuit that cannot be located on either side of that

13   Circuit split.  The majority opinion holds that Heck is a

14   bar to suit under § 1983 only until the convict is released

15   from custody (because habeas is no longer available to a

16   person at liberty); and this stretch is widened to discount

17   a post-vacatur plea of guilt to lesser charges on the same

18   crime.

19        The majority opinion thus places at risk of

20   constitutional litigation--for decades--prosecutors and

21   police who obtained convictions of persons who indisputably

22   or even admittedly committed the crimes charged.

23        I would affirm the district court's judgment.  The

24   unconstitutional conduct for which Poventud seeks damages is

1    the failure to disclose the identification of another person

2    as having committed the crime.  The premise of that claim--

3    that Poventud was denied the opportunity to effectively

4    challenge his identification as the perpetrator--necessarily

5    implies the invalidity of the unchallenged, subsisting

6    conviction that was entered on Poventud's plea of guilty to

7    that crime.  <u>Heck</u> therefore bars Poventud from asserting his

8    § 1983 claim.

9                                    **I**

10        In 1998, a jury convicted Poventud of attempted murder

11    in the second degree, attempted robbery in the first degree,

12    and criminal possession of a weapon in the first degree, in

13    connection with the armed robbery and shooting of Younis

14    Duopo as he was driving a livery cab.  The time and place

15    were: approximately 8:40 p.m. on March 6, 1997, between

16    Oliver Place and Marion Avenue in the Bronx.  The conviction

17    and the 10-to-20 year sentence were affirmed on appeal.  <u>See</u>

18    <u>People v. Poventud</u>, 300 A.D.2d 223, 224 (1st Dep't 2002).

19        In 2005, the New York Supreme Court, Bronx County,

20    vacated the conviction and ordered a re-trial on the ground

21    that the prosecution had withheld potentially exculpatory

22    evidence.  This ruling was highly solicitous of Poventud's

23    rights; in fact, the evidence withheld might as easily be

24    viewed as *inculpatory*.

3

1      After the hold-up, photo ID of Poventud's brother

2    Francisco was found in a wallet in Duopo's vehicle.  When

3    shown the photograph of Francisco, Duopo opined that it

4    "looks like" the perpetrator, or "looks a lot like him."  A

5    98.  (The majority calls this a positive identification.[1]

6    <u>See</u> Maj. Op. at 3.)  After it was ascertained that Francisco

7    was and had been in prison, Duopo positively identified

8    Marcos Poventud, as he later did in a line-up and for a

9    third time in the courtroom.  A 98, 114.  The state court

10   ordered a re-trial on the ground that <u>Brady</u> was violated by

11   the State's failure to disclose Duopo's observation that

12   Francisco's photo resembled the perpetrator.  <u>See</u> <u>People v.</u>

13   <u>Poventud</u>, 802 N.Y.S.2d 605, 608 (Brx. Cnty. 2005).

14      Poventud claims that he looks nothing like his own

15   brother (which would certainly make Duopo's observation

16   uncanny), and that it is just one of those coincidences that

17   his jailed brother's photo ID was left at the scene of the

18   crime.

19      Poventud had the opportunity to test those explanations

20   before a jury on retrial.  Instead, Poventud pled guilty to

21   attempted robbery in the third degree.  At his hearing, he

22   admitted to holding up Duopo as he was driving a livery cab

---

[1] The Bronx District Attorney's Office considered this statement a "tentative identification," A 59, that tended to inculpate Poventud, A 75.

1    at: approximately 8:40 p.m. on March 6, 1997, between Oliver

2    Place and Marion Avenue in the Bronx.  The plea colloquy

3    thus resolved the issue: Duopo's identification of Poventud

4    was sound.  A 93.  Poventud was re-sentenced to one year in

5    prison and, because he had already served nine years, was

6    released.

7        Upon release from prison, Poventud filed a motion

8    challenging the voluntariness of his plea, but later

9    withdrew the motion.  He then filed this damages action

10    under 42 U.S.C. § 1983 alleging that the prosecution's <u>Brady</u>

11    violation deprived him of a fair trial.  <u>See</u> <u>Brady v.</u>

12    <u>Maryland</u>, 373 U.S. 83 (1963).  Judge Batts ruled that

13    Poventud's claims were barred by <u>Heck v. Humphrey</u>, 512 U.S.

14    477 (1994), and dismissed the case.  <u>See</u> <u>Poventud v. City of</u>

15    <u>N.Y.</u>, No. 07 Civ. 3998 (DAB), 2012 WL 727802, at *3

16    (S.D.N.Y. Mar. 6, 2012).

17

18                                **II**

19        Even before <u>Heck</u>, our Circuit (like many others) barred

20    § 1983 claims that necessarily implied the invalidity of

21    outstanding convictions--and did so regardless of whether

22    the plaintiff remained in jail.  The seminal case was

23    <u>Cameron v. Fogarty</u>, 806 F.2d 380 (2d Cir. 1986), which

24    explained why a plaintiff's outstanding conviction (for

1   possession of stolen property) barred his damages action for

2   false arrest under § 1983: "the common-law rule, equally

3   applicable to actions asserting false arrest, false

4   imprisonment, or malicious prosecution, was and is that the

5   plaintiff *can under no circumstances recover* if he was

6   convicted of the offense for which he was arrested." Id. at

7   388 (emphasis added). Cameron extended that principle to

8   § 1983 actions, observing: "The right to bring suit under §

9   1983 is designed both to allow an injured person to obtain

10  compensation for the loss of his civil rights and to deter

11  public officials from further violation of such rights."

12  806 F.2d at 388. Yet, neither interest "is more than

13  minimally implicated where the [claimant] was convicted."

14  Id.; see also Singleton v. City of N.Y., 632 F.2d 185, 195

15  (2d Cir. 1980) (dismissing malicious prosecution claim

16  brought under § 1983 on the same grounds).

17      The rule was given broad application. In Roesch v.

18  Otarola, 980 F.2d 850 (2d Cir. 1992), we explained that a

19  § 1983 plaintiff who seeks to challenge his conviction "must

20  pursue the criminal case to an acquittal or an unqualified

21  dismissal, or else waive his Section 1983 claim." Id. at

22  853. We later held that this bar applied to Brady

23  violations, Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir.

24  1999), as well as related claims under §§ 1981, 1985, and

6

1    1986, id. at 51-52.[2]  And, as discussed infra at 29-30,

2    several courts in this Circuit have held (and we have

3    affirmed) that the bar applies even if the subsequent guilty

4    plea is to a lesser charge.  See McNeill v. People of City &

5    State, No. 06-CV-4843(NGG), 2006 WL 3050867, at *3 (E.D.N.Y.

6    Oct. 24, 2006), summarily aff'd, 242 F. App'x 777 (2d Cir.

7    2007); Papeskov v. Brown, No. 97 Civ. 5351(SS), 1998 WL

8    299892, at *5 (S.D.N.Y. June 8, 1998) (Sotomayor, J.),

9    summarily aff'd, 173 F.3d 845 (2d Cir. 1999); see also Stein

10   v. Cnty. of Westchester, N.Y., 410 F. Supp. 2d 175, 179

11   (S.D.N.Y. 2006).

12        None of these cases turned on whether the plaintiff was

13   incarcerated or at liberty when suit was filed, or suggested

14   that this consideration had any weight or bearing.  In most

15   of these cases, the plaintiff was not in custody.  See,

16   e.g., Roesch, 980 F.2d at 850; Singleton, 632 F.2d at 195;

---

[2] Heck confirmed that this bar is not limited to false
arrest, false imprisonment, and malicious prosecution
claims: the plaintiff alleged, inter alia, that prosecutors
"'knowingly destroyed' evidence 'which was exculpatory in
nature and could have proved [petitioner's] innocence[.]'"
512 U.S. at 479 (citation omitted); see also Channer v.
Mitchell, 43 F.3d 786, 787 (2d Cir. 1994) (per curiam);
Rosato v. N.Y. Cnty. District Attorney's Office, No. 09 Civ.
3742, 2009 WL 4790849, at *3-4 (S.D.N.Y. Dec. 14, 2009);
Davison v. Reyes, 11-CV-167 ENV LB, 2012 WL 948591, at *3
(E.D.N.Y. Mar. 20, 2012).  The majority opinion here
mistakenly suggests that the bar is so limited, Maj. Op. at
13 n.6, but prudently concludes that there is "no need" to
consider this case law in any depth, id. at 13.

1    McNeill, 2006 WL 3050867, at *2-3; Papeskov, 1998 WL 299892,

2    at *5; Stein, 410 F. Supp. 2d at 179.

3        These decisions consistently and methodically applied

4    the rule that plaintiffs may not use § 1983 to call into

5    question an outstanding criminal conviction, a rule that

6    avoided "the prospect of harassment, waste and endless

7    litigation, contrary to principles of federalism."

8    Singleton v. City of N.Y., 632 F.2d 185, 195 (2d Cir. 1980).

9        The majority relies on Leather v. Ten Eyck, 180 F.3d

10    420 (2d Cir. 1999) (Calabresi, J.) and cases that cited or

11    followed it;[3] but these cases could not have undone the law

12    of this Court without review in banc.[4]  See United States v.

---

[3] Among other cases, the majority cites Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999) (Walker, J.), which was decided the same day as Leather.  But, as discussed infra at 14, Jenkins involved a challenge to a prison disciplinary sanction (not the plaintiff's conviction itself), which plainly did not trigger the Heck bar.  See id. at 27 ("[Nothing in Supreme Court precedent requires that the Heck rule be applied to a challenge by a prisoner to a term of disciplinary segregation[.]").

[4] The majority opinion wonders aloud why such cases were not challenged in banc.  See Maj. Op. at 13-14.  First, there is little point in mobilizing the Court in banc to excise dicta.  Second, this Court is notoriously reluctant to sit in banc.  See Ricci v. DeStefano, 530 F.3d 88, 93 (2d Cir. 2008) (Jacobs, C.J., dissenting from denial of rehearing in banc) (arguing that "to rely on [Circuit] tradition to deny rehearing in banc starts to look very much like abuse of discretion"); see id. at 89 (Calabresi, J., concurring in denial of rehearing in banc) (concluding that in banc review is unnecessary even when "[d]ifficult issues" are presented).

1    <u>King</u>, 276 F.3d 109, 112 (2d Cir. 2002).  In any event, our

2    Circuit law, as it was settled before <u>Leather</u>, was validated

3    and confirmed by the Supreme Court in <u>Heck v. Humphrey</u>, 512

4    U.S. 477 (1994).  While Heck was serving a fifteen-year

5    sentence for voluntary manslaughter and his direct appeal

6    was still pending, he brought a § 1983 action alleging that

7    prosecutors and police officers had destroyed exculpatory

8    evidence.  <u>Id.</u> at 478-79.  The Supreme Court affirmed the

9    dismissal of the claim because "civil tort actions are not

10    appropriate vehicles for challenging the validity of

11    outstanding criminal judgments," and because success on the

12    plaintiff's § 1983 claim "would necessarily imply the

13    invalidity of his conviction or sentence[.]"  <u>Id.</u> at 486-87.

14    To recover damages for allegedly unconstitutional conviction

15    or imprisonment, a § 1983 plaintiff "must prove that the

16    conviction or sentence has been reversed on direct appeal,

17    expunged by executive order, declared invalid by a state

18    tribunal authorized to make such determination, or called

19    into question by a federal court's issuance of a writ of

20    habeas corpus[.]"  <u>Id.</u>

21        This requirement is animated by the values of finality

22    and consistency, and "a strong judicial policy against the

23    creation of two conflicting resolutions arising out of the

24    same or identical transaction."  <u>Id.</u> at 484 (citation and

9

1    quotation marks omitted).  <u>Heck</u>, which strengthened and

2    validated our existing precedent, remains the rule until--if

3    ever--the Supreme Court alters its holding.

4

5                              **III**

6        A Circuit split has opened as to whether some

7    exceptions to <u>Heck</u> may be permitted on the basis of self-

8    described dicta signed by five Justices (three of whom are

9    no longer on the Court).  The majority opinion patches

10   together the various concurrences and passages of dicta,

11   identifying the Justices (some active, some retired) who

12   wrote or signed the opinions.  <u>See</u> Maj. Op. at 7-8

13   (discussing <u>Spencer v. Kemna</u>, 523 U.S. 1, 18-21 (1998)

14   (Souter, <u>J.</u>, concurring)).  In a nutshell, these Justices

15   posited that "a former prisoner, no longer 'in custody,' may

16   bring a § 1983 action establishing the unconstitutionality

17   of a conviction or confinement without being bound to

18   satisfy a favorable-termination requirement that it would be

19   *impossible as a matter of law* for him to satisfy."  <u>Spencer</u>,

20   523 U.S. at 21 (Souter, <u>J.</u>, concurring) (emphasis added).

21   While some Circuits carve out a narrow exception to <u>Heck</u>'s

22   holding based on the <u>Spencer</u> concurrences, the majority in

23   our case adopts a view that would have no basis even in

24   Supreme Court dicta.

1   Several courts of appeals have concluded (as I do) that

2 the Spencer concurrences cannot override Heck's binding

3 precedent.  See, e.g., Entzi v. Redmann, 485 F.3d 998, 1003

4 (8th Cir. 2007); Gilles v. Davis, 427 F.3d 197, 209-10 (3d

5 Cir. 2005); Randell v. Johnson, 227 F.3d 300, 301 (5th Cir.

6 2000); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998).

7   These opinions heed the Supreme Court's admonition

8 that, even if binding precedent "appears to rest on reasons

9 rejected in some other line of decisions, the Court of

10 Appeals should follow the case which directly controls,

11 leaving to this [Supreme] Court the prerogative of

12 overruling its own decisions."  Agostini v. Felton, 521 U.S.

13 203, 237 (1997) (citations and internal quotation marks

14 omitted).  We adhere to that rule: "It is not within our

15 purview to anticipate whether the Supreme Court may one day

16 overrule its existing precedent."  United States v.

17 Santiago, 268 F.3d 151, 155 n.6 (2d Cir. 2001).

18   Other Circuits have nevertheless held that Spencer's

19 dicta does allow for unusual and compelling circumstances in

20 which Heck's holding does not absolutely foreclose a claim.

21 See, e.g., Burd v. Sessler, 702 F.3d 429, 435-36 (7th Cir.

22 2012); Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir.

23 2010); Wilson v. Johnson, 535 F.3d 262, 267-68 (4th Cir.

24 2008); Powers v. Hamilton Cnty. Public Defender Comm'n, 501

1    F.3d 592, 603 (6th Cir. 2007); Guerrero v. Gates, 442 F.3d

2    697, 704 (9th Cir. 2006); Harden v. Pataki, 320 F.3d 1289,

3    1298 (11th Cir. 2003).

4        But even the courts that recognize certain narrow

5    exceptions to Heck emphatically reject the idea that the

6    rule in Heck no longer applies once a convict exits the

7    prison gates.  The Seventh Circuit, for instance, recently

8    dismissed a claim by a released convict who argued that

9    § 1983 must be made available if habeas relief is not.  See

10   Burd, 702 F.3d at 435-36 (holding that "Heck applies where a

11   § 1983 plaintiff could have sought collateral relief at an

12   earlier time but declined the opportunity and waited until

13   collateral relief became unavailable before suing").

14   Likewise the Ninth Circuit: "The fact that [a criminal

15   defendant] is no longer in custody and thus cannot overturn

16   his prior convictions by means of habeas corpus does not

17   lift Heck's bar."  Guerrero, 442 F.3d at 704.[5]  And the

18   Sixth Circuit: "It seems unlikely that Justice Souter

19   intended to carve out a broad Heck exception for all former

20   prisoners."  Powers, 501 F.3d at 603.

---

    [5]  The Ninth Circuit qualified its endorsement of the
Spencer dicta further: the exception posited by Justice
Souter "'affects only former prisoners challenging loss of
good-time credits, revocation of parole or similar matters,'
not challenges to an underlying conviction such as those
Guerrero brought." Guerrero, 442 F.3d at 705 (quoting
Nonnette v. Small, 316 F.3d 872, 878 n.7 (9th Cir. 2002)).

12

1          Our Court has gone its own way, without adhering to

2     either side of this broad Circuit split.  This Circuit first

3     invoked the Spencer dicta in Leather v. Ten Eyck, 180 F.3d

4     420 (2d Cir. 1999) (Calabresi, J.), to allow an individual

5     fined for drunk driving to seek damages in federal court

6     even though he chose to forgo an appeal in state court.  A

7     year later, the Spencer dicta was adopted as a holding, in a

8     broadened and generalized form, in Green v. Montgomery, 219

9     F.3d 52 (2d Cir. 2000) (Calabresi, J.): "Heck acts only to

10    bar § 1983 suits when the plaintiff has a habeas corpus

11    remedy available to him (i.e., when he is in state

12    custody)."  Id. at 60 n.3.  The majority's present opinion

13    builds on this error.

14         The final segment of the majority opinion cites several

15    Second Circuit opinions to argue for a spurious consensus.

16    Two of those cases allowed § 1983 claims to proceed when the

17    plaintiff challenged conditions of confinement rather than

18    the fact or duration of confinement.  See Jenkins v.

19    Haubert, 179 F.3d 19, 25 (2d Cir. 1999) (Walker, J.); Sims

20    v. Artuz, 230 F.3d 14, 24 (2d Cir. 2000) (Kearse, J.).

21    These uncontroversial decisions are straightforward

22    applications of Supreme Court precedent.  See Preiser v.

23    Rodriguez, 411 U.S. 475, 490 (1973).  Another case cited by

24    the majority, Huang ex rel. Yu v. Johnson, 251 F.3d 65 (2d

1    Cir. 2001) (Winter, J.), is likewise inapposite.  See id. at

2    67 (considering whether New York law required court to

3    credit a juvenile for time spent in a different institution

4    on an unrelated charge); see also Huang ex rel. Yu v.

5    Johnson, 274 F.3d 682, 682-83 (2d Cir. 2001) (per curiam)

6    (dismissing case after New York Court of Appeals held that

7    government agency properly calculated juvenile's sentence).

8    The majority devotes considerable space to these dissimilar

9    cases, see Maj Op. at 8-9, 10-14, and counts on fingers the

10   judges involved in their dispositions, see id. at 12 n.4.

11   It is true that these opinions cited the Spencer dicta with

12   approval, expressing support for a very narrow exception

13   that the majority opinion here expands immoderately and

14   adopts as a holding.  But I decline to argue over dicta

15   distilled from dicta--especially when the Supreme Court, ten

16   sister Circuits, and numerous cases in this Circuit counsel

17   otherwise.  See supra at 5-8, 11-12.

18

19                              IV

20      The majority's holding--that Heck is inapplicable

21   because Poventud was no longer in custody when he filed

22   suit--relies (as I have shown) on Justice Souter's dicta in

23   Spencer v. Kemna, 523 U.S. 1, 3 (1998), which the majority

24   opinion presumes to elevate as the "better" rule.  See Maj.

1    Op. at 7.  (The Justices are free to choose the "better"

2    rule--or a worse one, for that matter--but we are not.)  In

3    <u>Heck</u>, the Court made its choice perfectly clear.

4        <u>Heck</u> involved a challenge by a plaintiff in custody,

5    but the opinion left no doubt that its holding applied

6    regardless of whether the plaintiff was in custody or at

7    liberty:

8              We hold that, in order to recover damages for
9              allegedly unconstitutional conviction or
10            imprisonment, or for other harm caused by actions
11            whose unlawfulness would render a conviction or
12            sentence invalid, a § 1983 plaintiff must prove
13            that the conviction or sentence has been reversed
14            on direct appeal, expunged by executive order,
15            declared invalid by a state tribunal authorized to
16            make such determination, or called into question by
17            a federal court's issuance of a writ of habeas
18            corpus, 28 U.S.C. § 2254.  A claim for damages
19            bearing that relationship to a conviction or
20            sentence that has <em>not</em> been so invalidated is not
21            cognizable under § 1983.

22    <u>Heck</u>, 512 U.S. at 486-87.  The majority here presumptuously

23    concludes that <u>Heck</u>'s holding is expressed with careless

24    overbreadth, and is not intended to apply to <em>all</em> § 1983

25    actions including those filed by released convicts.[6]

---

[6] Of course, the Supreme Court is not obligated to adopt the narrowest holding possible.  <u>See</u> <u>Citizens United v. Fed. Election Comm'n</u>, 558 U.S. 310, 130 S. Ct. 876, 919, 175 L. Ed. 2d 753 (2010) (Roberts, <u>C.J.</u>, concurring) ("It should go without saying . . . that we cannot embrace a narrow ground of decision simply because it is narrow; it must also be right."); <u>In re McDonald</u>, 205 F.3d 606, 612 (3d Cir. 2000) ("[A] holding . . . extends beyond a statement of who won or lost a case.  A court can choose among different holdings that offer broader or narrower ways of resolving a

15

Provided by CourtAlert                                    www.CourtAlert.com

1      _Heck_'s reasoning confirms that its holding means what

2   it says.  Favorable termination is an absolute prerequisite

3   to § 1983 actions that seek damages arising from unlawful

4   incarceration: "We do not engraft an exhaustion requirement

5   upon § 1983, but rather deny the existence of a cause of

6   action."  _Id._ at 489.  Since no cause of action exists under

7   § 1983 so long as the plaintiff stands convicted of the

8   crime, it cannot matter whether a plaintiff whose conviction

9   subsists is in custody or at liberty, or has (or could have)

10  pursued habeas relief.

11      The incompatibility between _Heck_'s holding and Justice

12  Souter's dicta is acknowledged by Justice Souter's

13  expression of his views in terms of disagreement.[7]

---

dispute.").  Lower courts therefore may not escape the reach
of a Supreme Court opinion by limiting its facts.  _See_
_generally_ Michael C. Dorf, _Dicta and Article III_, 142 U. Pa.
L. Rev. 1997, 2040 (1994) (explaining that courts should not
cast aside as "mere dictum" an earlier ruling, regardless of
"the relative merits of a broad or narrow decisional
principle in the initial case"); Michael Abramowicz &
Maxwell Stearns, _Defining Dicta_, 57 Stan. L. Rev. 953, 986
(2005) ("[B]readth does not make statements dicta.").

    [7] The Justice observed that although the case arose at
the intersection of § 1983 and the federal habeas statute,
the majority nonetheless "appear[ed] to take the position
that the statutes were never on a collision course in the
first place."  _Id._ at 492 (Souter, _J._, concurring).  As
Justice Souter explained, the Court reached this conclusion
"because, like the common-law tort of malicious prosecution,
§ 1983 requires (and, presumably, has always required)
plaintiffs seeking damages for unconstitutional conviction
or confinement to show the favorable termination of the
underlying proceeding."  _Id._  Justice Souter then said why,

1    Reciprocally, the majority opinion in <u>Heck</u> rejected Justice

2    Souter's bid to narrow its holding:

3              Justice Souter also adopts the common-law principle
4              that one cannot use the device of a civil tort
5              action to challenge the validity of an outstanding
6              criminal conviction, but thinks it necessary to
7              abandon that principle in those cases (of which no
8              real-life example comes to mind) involving former
9              state prisoners who, because they are no longer in
10             custody, cannot bring postconviction challenges.
11             *We think the principle barring collateral attacks--*
12             *a longstanding and deeply rooted feature of both*
13             *the common law and our own jurisprudence--is not*
14             *rendered inapplicable by the fortuity that a*
15             *convicted criminal is no longer incarcerated.*

16    <u>Id.</u> at 490 n.10 (emphasis added) (internal citation

17    omitted).

18         The majority in our case deprecates this footnote as

19    dictum, Maj. Op. at 7 (though it is unclear to me why this

20    would make it less compelling to the majority, whose entire

21    argument here rests on nothing else).  I disagree: the

22    passage does not address some ancillary issue; it responds

23    directly to Justice Souter's criticism, emphasizing that the

24    scope and rationale of the holding are broad enough to be

25    unaffected by whether the plaintiff is in jail or not.  "'A

26    dictum . . . is an assertion in a court's opinion of a

27    proposition of law [that] does not explain why the court's

28    judgment goes in favor of the winner.'"  <u>Barclays Capital</u>

29

_____

in his view, this approach was flawed.  <u>Id.</u>

17

1   <u>Inc. v. Theflyonthewall.com, Inc.</u>, 650 F.3d 876, 899 (2d

2   Cir. 2011) (quoting Pierre N. Leval, <u>Judging Under the</u>

3   <u>Constitution: Dicta About Dicta</u>, 81 N.Y.U. L. Rev. 1249,

4   1256 (2006)).  As illustrated above, <u>Heck</u> made clear that

5   the rule did not impose an exhaustion requirement and did

6   not turn on the availability of habeas relief or whether the

7   plaintiff is still in jail.  <u>Heck</u>, 512 U.S. at 489, 490

8   n.10.  Just as a court may state (in binding terms) what the

9   rule is, it may also state (in terms equally binding) what

10   the rule is *not*.

11     In any event, footnote ten only reinforces what <u>Heck</u>'s

12   holding makes plain: a claim for damages that necessarily

13   implies the invalidity of an outstanding conviction is not

14   cognizable under § 1983.  <u>Heck</u>, 512 U.S. at 486-87.

15                   *   *   *

16     The concurrences in <u>Heck</u> and <u>Spencer</u> could not narrow

17   or redefine or otherwise alter the Supreme Court's holding.

18   Unlike plurality opinions, in which "the holding of the

19   Court may be viewed as that position taken by those Members

20   who concurred in the judgment on the narrowest grounds,"

21   <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977), a majority

22   opinion dictates the precise contours of the Court's

23   holding.  <u>See</u> Abramowicz & Stearns, <u>supra</u> n.6, at 1059.

24   "Critically, this is so even if a Justice concurring in the

1    judgment would have preferred instead to resolve the case on

2    a narrower ground[.]" Id. Likewise, the majority here

3    concedes, as it must, that Supreme Court dicta does not

4    outweigh Circuit precedent; only an intervening Supreme

5    Court *decision* will have that effect. See Maj. Op. at 14

6    n.7 (citing Meacham v. Knolls Atomic Power Lab., 381 F.3d

7    56, 70 (2d Cir. 2004) and Consol. Edison Co. of N.Y., Inc.

8    v. UDGI Utils., Inc., 423 F.3d 90, 101 n.12 (2d Cir. 2005)).

9

10                                    V

11        The majority opinion runs counter to the several values

12    that animate Heck (and our pre-Heck jurisprudence).

13        The Supreme Court has "long expressed . . . concerns

14    for finality and consistency and has generally declined to

15    expand opportunities for collateral attack." Heck, 512 U.S.

16    at 484-85. The majority opinion posits a rule that makes

17    the opportunity for inconsistent collateral attack eternal.

18        A § 1983 action that necessarily impugns an outstanding

19    conviction subverts the "longstanding and deeply rooted"

20    principle barring collateral attacks, id. at 490 n.10,

21    whether or not the challenge is issued from prison. An

22    exception for released inmates would violate "the hoary

23    principle that civil tort actions are not appropriate

24    vehicles for challenging the validity of outstanding

19

1    criminal judgments." <u>Id.</u> at 486.  It is an irrelevant

2    "fortuity that a convicted criminal is no longer

3    incarcerated." <u>Id.</u> at 490 n.10.

4         The majority's approach here also undermines

5    federalism.  "Federal post-trial intervention, in a fashion

6    designed to annul the results of a state trial, . . .

7    deprives the States of a function which quite legitimately

8    is left to them[.]" <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592,

9    609 (1975).  To allow collateral attacks on criminal

10   convictions in federal court upon the convict's release from

11   state prison would "fly in the teeth of <u>Heck</u>," <u>Figueroa v.</u>

12   <u>Rivera</u>, 147 F.3d 77, 81 (1st Cir. 1998), and would impair

13   the fundamental principles that compelled its holding.

14        The majority opinion has the single virtue of assuring

15   that there is absolutely no residual unavailability of

16   federal remedies to any state criminal defendant.  However,

17   there is no support in the Constitution or in § 1983 for the

18   principle that "every person asserting a federal right is

19   entitled to one unencumbered opportunity to litigate that

20   right in a federal district court." <u>Allen v. McCurry</u>, 449

21   U.S. 90, 103 (1980).  A § 1983 action need not "always and

22   everywhere be available." <u>Spencer</u>, 523 U.S. at 17.

23        Section 1983 aside, a convicted criminal is not without

24   recourse.  Upon release from custody, a convict may seek

Provided by CourtAlert                                        www.CourtAlert.com

1    habeas relief if the State continues to impose significant

2    restraints on his liberty, such as probation or parole.  See

3    Jones v. Cunningham, 371 U.S. 236, 242 (1963).  Even absent

4    such a showing, courts are now willing to presume that a

5    criminal conviction has continuing collateral consequences

6    that could support a post-release habeas petition.  See

7    Spencer v. Kemna, 523 U.S. 1, 8 (1998); see also Nonnette v.

8    Small, 316 F.3d 872, 878 n.7 (9th Cir. 2002) ("[T]he status

9    of prisoners challenging their underlying convictions or

10   sentences does not change upon release, because they

11   continue to be able to petition for a writ of habeas

12   corpus.").  The inability to bring a § 1983 action alone may

13   constitute a collateral consequence sufficient to overcome a

14   mootness challenge and support a convict's post-release

15   habeas petition.[8]  See Leonard v. Nix, 55 F.3d 370, 373 (8th

---

[8] The majority satirizes this statement as circular
(because I posit the unavailability of § 1983 as a possible
basis for seeking habeas relief, the existence of which, in
the majority's view, would render § 1983 unavailable).  See
Maj. Op. at 15-16.  But this text paragraph of my opinion
merely lists remedies (aside from § 1983) that remain
available to convicted criminals; it does not form a basis
for concluding that Poventud's § 1983 claim must be
dismissed.  Here, § 1983 is unavailable because the claim
would undermine an outstanding conviction--without regard to
whether habeas relief is also available.  See Heck, 512 U.S.
at 503 (Souter, J., concurring) (criticizing the majority
for imposing a favorable-termination requirement rather than
"constru[ing] § 1983 in light of the habeas statute and its
explicit policy of exhaustion"); Channer v. Mitchell, 43
F.3d 786, 787-88 (2d Cir. 1994) (per curiam).
    The majority's error illuminates a more significant

1    Cir. 1995) ("Leonard's section 1983 action gives this case

2    life, for if Leonard wins this habeas action, the state

3    becomes vulnerable to his section 1983 damages claim.

4    Leonard's petition is therefore not moot."); see also

5    O'Neill v. City of Phila., 32 F.3d 785, 788 n.7 (3d Cir.

6    1994); Sule v. Warden, ADX Florence Colo., 133 F.3d 933, at

7    *2 (10th Cir. Jan. 13, 1998) (unpublished).  And, of course,

8    all criminal defendants may pursue a direct appeal--whether

9    or not they remain in jail--through the state court system

10   and on to the Supreme Court of the United States.  Supreme

11   Court review is itself "sufficient to preserve the role of

12   the federal courts as the ultimate guardians of federally

13   guaranteed rights."  Waste Mgmt. of Wis., Inc. v. Fokakis,

14   614 F.2d 138, 141 (7th Cir. 1980).  Under any circumstance,

15   then, the convicted criminal has post-release remedies

16   available in both federal and state court.[9]

---

defect that pervades its entire analysis: a willingness to
view this case through the eyes of a concurring opinion
rather than the opinion of the Court.

   [9] Additionally, a convict may seek a writ of error
coram nobis from the court that rendered judgment against
him--here, the New York Supreme Court.  See United States v.
Morgan, 346 U.S. 502, 507 n.9 (1954); Finkelstein v.
Spitzer, 455 F.3d 131, 133-34 (2d Cir. 2006).  If
successful, he may then pursue damages under § 1983.
   To the extent that the majority relies on an implicit
notion that New York courts are inadequate protectors of
Poventud's federal rights, I disagree for several reasons.
[1] It was the New York Supreme Court that overturned
Poventud's original conviction on Brady grounds, a ruling

Provided by CourtAlert                                        www.CourtAlert.com

1          The majority opinion falls victim to the judicial

2     fallacy of viewing the ramifications of any legal principle

3     through the single prism of the plaintiff's interests.  But

4     it should be obvious that important interests are dis-served

5     when every prosecutor and every police officer remains

6     subject to suit for acts alleged to have happened years and

7     decades in the past, after memory fades, witnesses move on,

8     and evidence is discarded.  The worse the crime for which

9     the plaintiff was convicted, the longer the sentence, and

10    thus the worse the peril for public officials, who may years

11    later no longer be indemnified or defended.

12         The majority opinion likewise disadvantages the class

13    of persons who achieve vacatur of their convictions.

14    Allowing defendants to seek damages under § 1983 after

15    pleading guilty would create an incentive for prosecutors to

16    retry the case rather than offer a plea based on time

17    served.  Cf. Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir.

---

that was quite solicitous given that the evidence withheld
was arguably inculpatory (or, at best, a wash).  [2] It
would be unwise "to base a rule on the assumption that state
judges will not be faithful to their constitutional
responsibilities."  Huffman v. Pursue, Ltd., 420 U.S. 592,
611 (1975).  [3] Plaintiffs may be able to file a § 1983
action seeking an *injunction* against any individuals who are
impeding their efforts to appeal a conviction.  See Hoard v.
Reddy, 175 F.3d 531, 533 (7th Cir. 1999) (dismissing § 1983
claim for damages under Heck because injunction was the
appropriate remedy where plaintiff alleged that various
state officials were "illegally blocking his access to state
postconviction remedies").

23

1    1999) (observing that if the court were to recognize a

2    § 1983 action following a plea of nolo contendere, it would

3    make prosecutors, faced with the prospect of continuing

4    litigation and a possible damages award, much less likely to

5    offer such a deal).  It would also "undermine the finality

6    of plea bargains and jeopardize society's interest in a

7    system of compromise resolution of criminal cases."  Id.

8    Finality is a vital principle, not a bureaucratic means of

9    closing the judicial books.[10]  The majority opinion offers no

10   appreciable counterweight to these rooted values and vital

11   interests.

12

13                              **VI**

14        Even if we were free to prefer Spencer's dicta to the

15   holding of Heck (not to mention Second Circuit precedent),

16   the narrow exception articulated by Justice Souter would not

17   be applicable here.  As discussed above, the motivating

18   concern in the Spencer dicta was that circumstances beyond

19   the control of a criminal defendant might deprive him of the

_____

     [10] See Custis v. United States, 511 U.S. 485, 497 (1994)
("'[I]nroads on the concept of finality tend to undermine
confidence in the integrity of our procedures' and
inevitably delay and impair the orderly administration of
justice.") (quoting United States v. Addonizio, 442 U.S.
178, 184, n.11 (1979)).  Moreover, "when a guilty plea is at
issue, 'the concern with finality served by the limitation
on collateral attack has special force.'"  Id. (quoting
United States v. Timmreck, 441 U.S. 780, 784 (1979)).

                              24

1    opportunity to challenge a federal constitutional violation

2    in federal court.  Poventud is not such a person.

3        Poventud challenged his first conviction in state court

4    and won--making it unnecessary for him to seek federal

5    habeas relief.  At that point, Poventud had the option of

6    fighting at a new untainted trial or pleading guilty to the

7    same crime on reduced charges and accepting a reduced

8    sentence.  He chose to plead.  Poventud then had the option

9    of filing a motion to challenge the voluntariness of his

10   plea.  He withdrew it.[11]  It was therefore by no means

11   "impossible as a matter of law" for Poventud to challenge

12   his conviction and thereby satisfy Heck's favorable

13   termination requirement, Spencer v. Kemna, 523 U.S. 1, 21

14   (1998) (Souter, J., concurring); he simply decided not to.

15       A guilty plea "represents a break in the chain of

16   events which has preceded it in the criminal process,"

---

[11]  Poventud's allegations of "gruesome and repetitive
physical and sexual abuse" in prison are cited by the
majority, presumably to imply that the government's plea
offer, resulting in immediate release, was one that could
not be refused.  Maj. Op. at 4.  But it is naive to think
that any plea is free from powerful pressures and
influences, and that it is only the exceptional defendant
who has reason to fear prison.  Moreover, this argument is a
red herring; Poventud withdrew his § 440 motion challenging
the voluntariness of his guilty plea.  However tantalizing
the government's offer, Poventud swore in open court that he
participated in the armed robbery charged in the
indictment--which is of course the same crime of which he
was convicted originally.

1    <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973), and is

2    accorded "a great measure of finality," <u>Blackledge v.</u>

3    <u>Allison</u>, 431 U.S. 63, 71 (1977).  "When a criminal defendant

4    has solemnly admitted in open court that he is in fact

5    guilty of the offense with which he is charged, he may not

6    thereafter raise independent claims relating to the

7    deprivation of constitutional rights that occurred prior to

8    the entry of the guilty plea." <u>Tollett</u>, 411 U.S. at 267;[12]

9    <u>see also</u> <u>United States v. Gregg</u>, 463 F.3d 160, 164 (2d Cir.

10   2006) (per curiam) ("[A] guilty plea . . . conclusively

11   resolves the question of factual guilt supporting the

12   conviction, thereby rendering any antecedent constitutional

13   violation bearing on factual guilt a non-issue[.]").

14   Poventud's ability to attack his conviction therefore ended

15   when he pled guilty to the hold-up.  <u>Cf.</u> <u>Pouncey v. Ryan</u>,

---

[12] The <u>Tollett</u> bar, distinct from the rule in <u>Heck</u>, is
grounded in collateral estoppel rather than the plaintiff's
inability to prove a key element of his claim.  <u>See</u> <u>Tollett</u>,
411 U.S. at 267; <u>United States v. Podell</u>, 572 F.2d 31, 35
(2d Cir. 1978) ("It is well-settled that a criminal
conviction, whether by jury verdict or guilty plea,
constitutes estoppel in favor of the United States in a
subsequent civil proceeding as to those matters determined
by the judgment in the criminal case.").  Certainly, some
analytical overlap exists, and in this arena too the Supreme
Court has rejected the notion that a federal remedy *must* be
available to criminal defendants seeking to challenge state
convictions.  <u>See</u> <u>Migra v. Warren City Sch. Dist. Bd. of</u>
<u>Educ.</u>, 465 U.S. 75, 84 (1984) ("§ 1983 did not open the way
to relitigation of an issue that had been determined in a
state criminal proceeding[.]").

1    396 F. Supp. 126, 128 (D. Conn. 1975) (Newman, <u>J.</u>) (relying

2    on the "settled rule of law" that a civil suit may not be

3    used to attack a criminal conviction and rejecting

4    plaintiffs' attempt "to undermine the finality that must be

5    accorded the tactical decision the plaintiffs made in

6    tendering their pleas of guilty"); <u>Molina-Aviles v. Dist. of</u>

7    <u>Columbia</u>, 797 F. Supp. 2d 1, 6-7 (D. D.C. 2011)[13] (dismissing

8    § 1983 claims following guilty pleas because plaintiffs had

9    opportunities to challenge their pleas but instead filed

10    damages claims, "thereby undermining Plaintiffs' argument

11    that <u>Spencer</u> applies because there are no habeas-type

12    procedures available").[14]

---

[13] The <u>Molina-Aviles</u> court also held that "the fractured group of five concurring and dissenting Justices in <u>Spencer</u> cannot be found to have overruled the majority decision in <u>Heck</u>." <u>Molina-Aviles</u>, 797 F. Supp. at 5-6. Up to this point, <u>Molina-Aviles</u> is the only decision within the D.C. Circuit to reach this issue.

[14] <u>See also</u> <u>Domotor v. Wennet</u>, 630 F. Supp. 2d 1368, 1380 (S.D. Fla. 2009) <u>aff'd</u>, 356 F. App'x 316 (11th Cir. 2009) (<u>Heck</u> applied where the plaintiff, although no longer in custody, "entered into a plea agreement with knowledge of all or substantially all of the allegations that now form the basis of a § 1983 action for damages"); <u>Lewis v. City of Clarksburg</u>, 1:11-CV-192, 2013 WL 529954, at *8 (N.D. W. Va. Feb. 11, 2013) (internal citation omitted) (defendants, who pleaded guilty and then filed § 1983 claim upon release from custody, "are not exempt from <u>Heck</u>'s favorable termination requirement because their inability to obtain habeas relief is self-imposed, and not the consequence of any unforeseen turn of the law"). To allow defendants, after pleading guilty, to file § 1983 actions that call into question their convictions would "enable them to 'end-run <u>Heck</u>,' and, at bottom, would confer on them the benefit of their plea bargain while shielding them from its consequences." <u>Lewis</u>, 2013 WL 529954, at *8 (internal citation omitted).

1    The majority hedges on this point: "Poventud's guilty

2    plea may (or may not) supply defendants with a defense[.]"

3    Maj. Op. at 9.  But a valid outstanding conviction does

4    supply defendants with a defense--one that is complete and

5    categorical.  See Heck, 512 U.S. at 489; Cameron v. Fogarty,

6    806 F.2d 380, 389 (2d Cir. 1986).

7    Additionally, it cannot matter that Poventud's guilty

8    plea was to a lesser charge.  The question remains whether

9    success on Poventud's § 1983 claim would necessarily imply

10    the invalidity of the outstanding conviction.  Heck, 512

11    U.S. at 487.  "[I]f a criminal conviction arising out of the

12    same facts . . . is fundamentally inconsistent with the

13    unlawful behavior for which section 1983 damages are sought,

14    the 1983 action must be dismissed."  Smith v. City of Hemet,

15    394 F.3d 689, 695 (9th Cir. 2005) (in banc) (citation and

16    quotation marks omitted).

17    Several courts of this Circuit have dismissed § 1983

18    claims that sought damages for unlawful incarceration after

19    the plaintiffs (like Poventud) pled guilty to lesser charges

20    and were released from custody.  For example, in McNeill v.

21    People of City & State, No. 06-CV-4843 (NGG), 2006 WL

22    3050867 (Oct. 24, 2006), summarily aff'd, 242 F. App'x 777

23    (2d Cir. 2007), the vacatur of plaintiff's conviction for

24    (inter alia) murder in the second degree was followed by his

25    plea of guilty to assault (to avoid retrial) and his

28

1    immediate release.  <u>Id.</u> at *1.  The district court, citing

2    <u>Heck</u>, dismissed the plaintiff's § 1983 claims alleging false

3    arrest, false imprisonment, and malicious prosecution.  <u>Id.</u>

4    This Court affirmed, with no opinion needed to do so,

5    because although "[a]ppellant's state court conviction was

6    vacated, his subsequent guilty plea stands as a bar, under

7    <u>Heck</u>, to a § 1983 action."  <u>McNeill v. People of City &</u>

8    <u>State of N.Y.</u>, 242 F. App'x 777, 778 (2d Cir. 2007).

9         District Judge Sotomayor (as she was then) reached a

10   similar conclusion in <u>Papeskov v. Brown</u>, and this Court

11   agreed.  No. 97 Civ. 5351(SS), 1998 WL 299892, at *5

12   (S.D.N.Y. June 8, 1998), <u>summarily aff'd</u>, 173 F.3d 845 (2d

13   Cir. Apr. 23, 1999) (dismissing § 1983 action brought by

14   former inmate who was charged with assault and criminal

15   possession of a weapon and pled guilty to harassment); <u>see</u>

16   <u>also</u> <u>Stein v. Cnty. of Westchester, N.Y.</u>, 410 F. Supp. 2d

17   175, 179 (S.D.N.Y. 2006) (dismissing § 1983 action brought

18   by former inmate who successfully challenged conviction for,

19   <u>inter alia</u>, rape and sodomy, later pled guilty to

20   endangering the welfare of a child, and filed suit upon

21   release).

22        These cases, non-binding as they are, nevertheless

23   reflect the continued vitality of the <u>Cameron</u> line of

24   precedent.  <u>McNeill</u> is especially persuasive as a close

25

1    analog; and both of my colleagues in the majority on the

2    present panel sat on the panel in McNeill.

3        The majority relies on other courts' opinions in cases

4    that bear no resemblance whatsoever to the present.  See

5    Maj. Op. at 9 n.2 (citing Smith v. Gonzales, 222 F.3d 1220

6    (10th Cir. 2000) (holding that Heck was inapplicable where

7    court vacated defendant's conviction and government filed

8    nolle prosequi indicating that it would not prosecute

9    defendant's case further); Davis v. Zain, 79 F.3d 18, 19

10    (5th Cir. 1996) (holding that Heck was inapplicable where

11    court vacated defendant's conviction, defendant filed § 1983

12    action while second trial was pending, and court found it

13    "highly unlikely that Davis's § 1983 suit will implicate the

14    validity of his pending retrial")).  The majority's labored

15    search for support is telling.[15]

16        Some cases may present a difficult question as to

17    whether the § 1983 action is fundamentally inconsistent with

18    the defendant's guilty plea.  Cf. DiBlasio v. City of N.Y.,

19    102 F.3d 654, 659 (2d Cir. 1996) (Jacobs, J., concurring)

20    (observing that a conviction on a lesser charge of drug

21    possession might not bar the plaintiff's malicious

---

[15] The majority observes that "at the time he pled
guilty Poventud was aware of the Brady violation on which
his present lawsuit is based."  Maj. Op. at 9 n.2.  This
statement is puzzling.  Of course Poventud was aware of the
alleged Brady violation; his conviction had just been
overturned on that basis.  Surely the point is that he chose
to plead guilty to the crime rather than face retrial.

Provided by CourtAlert                                                    www.CourtAlert.com

1    prosecution claim for drug *trafficking*).[16]    A fact-intensive

2    inquiry may sometimes be needed, <u>see</u> <u>Covington v. City of</u>

3    <u>New York</u>, 171 F.3d 117, 122 (2d Cir. 1999), but Poventud's

4    allocution is clear enough:

5             [THE COURT:]         In this case it's charged that
6                                  on or about March 6, 1997, at
7                                  approximately 8:40 in the evening, in
8                                  the area of Oliver Place and Marion
9                                  . . . Avenue here in the County of
10                                 the Bronx, you did attempt to steal
11                                 personal property from another person
12                                 by using force, in that you used a
13                                 weapon in your attempt to steal
14                                 personal property.
15
16                                 Are those charges true?
17
18           THE DEFENDANT:       Yes.
19
20   A 93.

21        Poventud's guilty plea placed him at the scene of the

22   crime of which he was originally convicted, at the same time

---

[16] <u>United States v. Gregg</u>, 463 F.3d 160, 163-65 (2d Cir.
2006) (per curiam) offers another helpful contrast.  There,
we considered whether a defendant's guilty plea to a state
charge of criminal impersonation barred him from raising a
Fourth Amendment challenge to a federal firearms charge
arising from the same events.  <u>Id.</u> at 162.  Because the
firearm seizure "simply was not at issue" when the defendant
pleaded guilty to criminal impersonation, his guilty plea
did not bar a subsequent challenge to the search.  <u>Id.</u> at
166.  However, "*were Gregg challenging . . . the discovery
of the evidence supporting the criminal impersonation charge
to which he pled guilty, then . . . Gregg's Fourth Amendment
claims would be foreclosed*."  <u>Id.</u> (emphasis added).
     If Poventud had pled guilty to an unrelated charge, or
if his § 1983 claim had alleged unrelated police misconduct,
then Poventud's § 1983 action might not have undermined his
plea, making the case arguably more akin to <u>Gregg</u> and
<u>DiBlasio</u>.

31

1    of the same day, wielding a weapon, and holding up the

2    victim.  Poventud's § 1983 action calls that conviction and

3    plea into question, challenging the victim's identification

4    of him as one of his attackers, and asserting that Poventud

5    "spent the entire evening of March 6, 1997, through the

6    morning of March 7, 1997, at the home of his friend . . .

7    playing video games.  He was never anywhere near the

8    vicinity of Oliver Place and Marion Avenue, where the

9    shooting occurred."  A 106.  Success on Poventud's § 1983

10   action "would necessarily imply the invalidity" of his

11   outstanding conviction.  Heck, 512 U.S. at 487.  It is

12   therefore barred by Heck.

13                    *    *    *

14        The final section of the majority opinion introduces

15   the idea that Poventud's suit calls into question only his

16   first conviction, not his second.  See Maj. Op. at 14-16.

17   As I have already shown, Poventud's claim is premised on his

18   innocence of a crime to which he pled guilty.  See supra at

19   32-33.  Accordingly, it is foreclosed by Heck, which bars

20   both an action to recover damages for unconstitutional

21   conviction or confinement, as well as an action "that does

22   not seek damages directly attributable to conviction or

23   confinement but whose successful prosecution would

24   necessarily imply that the plaintiff's criminal conviction

25   was wrongful."  Heck, 512 U.S. at 487 n.6.  Poventud's claim

1    does both: [i] he seeks damages directly attributable to his

2    confinement, and [ii] success on his claim would necessarily

3    imply that his conviction (by guilty plea) was wrongful.

4    Poventud cannot evade this fact by "'[s]eeking damages only

5    for punishment he suffered in excess of the one-year

6    imprisonment he accepted as part of his plea.'"  Maj. Op. at

7    15 (quoting Appellant Br. 32).

8         Turning elsewhere, the majority posits the hypothetical

9    of a defendant who is tortured, then confesses, then

10    successfully challenges his conviction, then pleads guilty

11    prior to retrial (under no compulsion), and is then released

12    from prison.  I have three short responses:

13    •    Such a defendant would not need to rely on § 1983

14         because he could pursue intentional tort claims

15         against the offending officers--state or federal.

16         See N.Y. Ct. Cl. Act § 8 (McKinney) (waiving

17         sovereign immunity); Millbrook v. United States,

18         133 S. Ct. 1441, 1446 (2013) (holding that waiver

19         of sovereign immunity under Federal Tort Claims Act

20         for intentional acts committed by federal law

21         enforcement was not limited to investigative

22         activities).

23    •    I agree with the majority that "the claim for

24         damages for torture [would] in no way undercut[]

25         the second, and only existing, conviction and hence

33

1      [would] in no way [be] barred by <u>Heck</u>," Maj. Op. at

2      15.  That is because a claim for torture damages

3      would not necessarily imply the invalidity of the

4      defendant's conviction.  <u>Cf.</u> <u>Jackson v. Suffolk</u>

5      <u>Cnty. Homicide Bureau</u>, 135 F.3d 254, 257 (2d Cir.

6      1998) (holding that <u>Heck</u> did not bar Fifth

7      Amendment claim for excessive force because "a

8      finding that excessive force had in fact been used

9      would not necessarily require invalidation of the

10     conviction").  However, what the defendant

11     categorically may *not* do is seek damages for

12     "unlawful" confinement for criminal conduct that he

13     freely admitted.

14   •  The majority opinion thus illustrates the hazard of

15     creating constitutional law under the influence of

16     a seminar hypothetical.